United States District Court
Southern District of Texas
**ENTERED**
August 19, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| THOMAS MCCOOL, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:19-CV-00393 |
| § | |
| ANDREW SAUL, COMMISSIONER § | |
| OF THE SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## **MEMORANDUM AND ORDER**

Plaintiff Thomas McCool ("McCool") seeks judicial review of an administrative decision denying his application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Before me, with the consent of the parties, are competing motions for summary judgment filed by McCool and Defendant Andrew Saul, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 14, 15.

## BACKGROUND

McCool filed an application for disability insurance benefits under Title II of the Act, alleging disability as of August 26, 2014. McCool's application was initially denied and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found that McCool was not disabled. McCool filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). "To be sure, this is not a high threshold." *Calhoun v. Saul*, No. CV 18-9574, 2020 WL 1904006, at *1 (E.D. La. Apr. 17, 2020). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (internal quotation marks, citation, and emphasis omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Id.* (quotation marks and citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC')." *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (quotation marks, brackets, and citation omitted). "The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Id.*

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## THE ALJ'S DECISION

The ALJ found at step one that McCool had not engaged in substantial gainful activity since August 26, 2014.

The ALJ found at step two that McCool had the following severe impairments: migraine headaches, arthritis, traumatic brain injury, somatoform disorder, depression, and anxiety.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed McCool's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform a full range of work at all exertional levels but with some nonexertional limitations. The claimant should avoid work around bright lights, such as strobe lights or bright sunlight. He should not work around loud noises, such as jackhammers and heavy traffic. Regarding his mental limitations, he can understand, remember and apply information in order to carry out detailed but not complex work related activities. He can maintain concentration, persistence and pace for 2 hour periods with customary breaks during an 8 hour workday. He should avoid fast paced production work. He can have occasional interaction with supervisors, co-workers and the general public.

Dkt. 11-4 at 11. At step four, the ALJ found that McCool is incapable of performing past relevant work as a restaurant manager or preparation cook.

At step five, the ALJ considered McCool's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine if there was any other work he could perform. Based on the relevant factors, the ALJ concluded that McCool was "not disabled," and that he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.*

4

at 19. The ALJ accepted the vocational expert's testimony that McCool could still perform numerous occupations, including but not limited to: laundry worker (Dictionary of Occupational Titles ("DOT") 361.687-012), photocopy machine operator (DOT 207.685-014), and surveillance system monitor (DOT 379.367-010). Accordingly, the ALJ determined that McCool was not disabled and therefore not entitled to benefits.

## DISCUSSION

McCool argues that the ALJ's decision must be reversed and remanded for several reasons: (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ's step three finding is conclusory; and (3) the ALJ failed to rule on McCool's post-hearing objections. I am persuaded by McCool's argument that the ALJ's RFC determination is not supported by substantial evidence. Let me explain why.

A claimant's RFC delineates what the claimant can still do despite his limitations. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2; 20 C.F.R. § 416.945. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour workday, five days a week, or an equivalent schedule. *See* SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *See id.* The RFC is a function-by-function assessment, considering both exertional and nonexertional factors based upon all of the relevant evidence in the case record. *See id.* at 3–6.

"Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of

seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *See id.* "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and explain how any inconsistencies in the evidence were resolved. *See* SSR 96-8p, 1996 WL 374184, at *7.

McCool divides his RFC argument into two parts. First, he attacks the ALJ's determination of his nonexertional limitations. Then, he attacks the ALJ's determination of his exertional limitations.

**Nonexertional Limitations:** McCool contends that the ALJ fashioned his nonexertional limitation determination without "point[ing] to any medical evidence that clearly establishes the effect of McCool's mental impairments." Dkt. 14 at 18. If true, this would constitute error.

The ALJ is solely responsible for determining a claimant's RFC, including whether to accept or reject medical opinions on a claimant's ability to perform work-related activities. *See Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). However, the ALJ "may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th

6

Cir. 2009). *See also Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (collecting cases). "[I]f an ALJ rejects all opinion evidence in the record, the ALJ must obtain new opinion or otherwise rely on medical evidence that demonstrates how a plaintiff's impairments affect the ability to work. Failure to do so precludes the ALJ's RFC determination from being supported by substantial evidence." *Ramirez v. Saul*, No. 4:18-CV-2504, 2020 WL 1853749, at *3 (S.D. Tex. Apr. 12, 2020) (citations omitted).

As mentioned above, at step two, the ALJ found the following severe impairments: migraine headaches, arthritis, traumatic brain injury, somatoform disorder,[1] depression, and anxiety. Then, at step three, the ALJ found that McCool has the following mental limitations:

1. Mild limitation in understanding, remembering, or applying information;
2. Moderate limitation in interacting with others;
3. Moderate limitation with regard to concentrating, persisting, or maintaining pace; and
4. Mild limitation in adapting or managing himself.

*See* Dkt. 11-4 at 10. Importantly, the ALJ took care to explain that the step two and step three determination is "not a [RFC] assessment" because "steps 4 and 5 . . . require[] a more detailed assessment," which would be explained in the RFC portion of her decision. *Id.* at 11. The ALJ proceeded to find that McCool "has the [RFC] to perform a full range of work at all exertional levels but with some nonexertional limitations." *Id.* "Regarding

---

[1] "The Fifth Circuit has recognized that '[t]he basic feature of somatoform disorders is the presence of physical symptoms for which there are no demonstrable organic findings,' such that pain and other symptoms may exist as a result of such a disorder rather than physical impairments." *Olivares v. Berryhill*, No. SA-16-CA-1220-XR, 2018 WL 4035990, at *2 (W.D. Tex. Aug. 23, 2018) (quoting *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994)).

his mental limitations, he can understand, remember and apply information in order to carry out detailed but not complex work related activities. He can maintain concentration, persistence and pace for 2 hour periods with customary breaks during an 8 hour workday." *Id.* The ALJ also found that McCool "should avoid fast paced production work," and that he "can have occasional interaction with supervisors, co-workers and the general public." *Id.*

There were three medical opinions addressing the functional impact of McCool's severe mental impairments. They were: Consultative Psychological Examiner Dr. Amy Harkins and State Agency Medical Consultants Dr. Michelle Chappius and Dr. Sheri Tomak. In fashioning the nonexertional limitations, the ALJ expressly assigned little weight to every medical opinion in the administrative record that addressed McCool's mental limitations[2] before, paradoxically, concluding that his RFC "is supported by the objective medical evidence of record and the State agency consultants' opinions." *Id.* at 17. I use the term "paradoxically" because in the paragraph immediately preceding her RFC conclusion, the ALJ explained that the State agency consultants had "opined that [McCool] *did not have any severe impairments*," and "[d]ue to the advantage of additional evidence and/or testimony received at the hearing level indicating a greater degree of impairment, *the undersigned gives those opinions little weight*." *Id.* (emphasis added). It is hard to imagine a more problematic scenario. Obviously, the State agency consultants' opinions, which failed to even acknowledge any of McCool's severe

---

[2] The ALJ assigned only one medical opinion "considerable weight." Dkt. 11-4 at 15. That opinion, offered by Dr. Milton Kirkwood, does not discuss, or otherwise address, any nonexertional limitations. *See* Dkt. 11-10 at 46

impairments, could not have simultaneously supported any nonexertional limitations based on those unrecognized impairments. And, although the ALJ states that his RFC is supported by the objective medical evidence, I see no discussion of any objective medical evidence opining on how McCool's mental impairments impact his ability to work. In other words, "[b]ecause the ALJ discounted all . . . medical opinions and the record is otherwise devoid of medical evidence of how [McCool's mental] impairments impact [his] ability to work, the ALJ's determination is not based on substantial evidence." *Ramirez*, 2020 WL 1853749, at *4 (collecting cases). As succinctly explained by the *Ramirez* court, this type of error is harmful and requires remand. *See id.* at *4 n.20 (collecting authority).

**Exertional Limitations:** To be clear, I need not and do not reach McCool's arguments related to the ALJ's exertional limitation determination. I write only to point out that Dr. Mark Khorsandi ("Dr. Khorsandi") seems to have offered the most detailed medical opinion addressing McCool's health as it relates to exertional limitations. Specifically, Dr. Khorsandi examined McCool on February 20, 2018, and made several medical findings, including the following: corrugator muscles were hypertrophic and tender to palpation; tenderness of the supraorbital nerve at the foramen/ridge; tenderness over the greater occipital nerve with pain along the distribution of the nerve; tenderness of the zygotemporal branch of the trigeminal nerve; brow ptosis; tenderness of the temporal mandibular joint; and retrocollis pain involving extension of the neck, tenderness of the crown, SON pain, temporal pain, and generalized tenderness of the scalp. *See* Dkt. 11-10 at 61–62. At the conclusion of the examination, Dr. Khorsandi

completed a form dated February 20, 2018, offering his medical opinion on how McCool's impairments translated into physical limitations.[3] *See id.* at 54–56. Although the ALJ discusses Dr. Khorsandi's examination and the medical opinion dated February 20, 2018, she never expressly assigned that medical opinion a specific weight. *See* Dkt. 11-4 at 15–16. This is problematic. *See Foley v. Colvin*, No. 3:14-CV-4176-BN, 2015 WL 5836173 at *5 (N.D. Tex. Oct. 2, 2015) (finding that although the ALJ identified examining medical opinions, his failure to "expressly explain the weight" given to these opinions was error). On remand, the ALJ should make sure that she expressly assigns a weight to all medical opinions and clearly explains her reasoning for assigning that weight.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 14) is **GRANTED**, and Defendant's Motion for Summary Judgment (Dkt. 15) is **DENIED**.

SIGNED in Houston, Texas, this \_\_\_ day of August, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] Dr. Khorsandi also completed another medical opinion, which was memorialized "[i]n an undated Medical Release." Dkt. 6-3 at 16. The ALJ gave "no weight" to the undated medical opinion because it "is a check the box form." *Id.* I offer no opinion as to whether the ALJ's rejection of the undated medical opinion was appropriate. I mention it only to make clear that for the purpose of this discussion, I am referring to Dr. Khorsandi's medical opinion dated February 20, 2018, and not the undated medical opinion.